IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| TEENA GEORGE, § | |
| § | |
| Plaintiff, § | |
| § | |
| v.  § | Civil Action No. 4:20-cv-01370-O-BP |
| § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Teena George applied for Disability Insurance Benefits ("DIB") under the Social Security Act ("SSA"). The Commissioner denied her application because she was not disabled. George appeals. Because the Commissioner applied correct legal standards in denying George's application and substantial evidence supports the Commissioner's denial, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision and **DISMISS** this case **with prejudice**.

**I.     BACKGROUND**

George applied for DIB under SSA Title II, claiming disability since December 2018 because of ulcerative colitis ("UC"). *See* Soc. Sec. Admin. R. [hereinafter "Tr."], ECF No. 15-1 at 153-56, 181. The Commissioner denied George's application initially and upon reconsideration. Tr. 78, 97.

Seeking to challenge the Commissioner's denial, George requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* at 109-110. The ALJ conducted a telephonic hearing (*id.* at 25-63), during which George testified her UC causes her to struggle with disabling incontinence.

She wears diapers (*id.* at 46) and "pretty much [has] to stay right next to the bathroom." *Id.* at 47. Because of her frequent bowel movements ("BMs"), she would need a "15 to 20 minute" bathroom break "more than 30" times during an eight-hour workday. *Id.* at 51-52. Thus, she contends she is disabled under the SSA and entitled to DIB. *See* ECF No. 17.

The ALJ disagreed, however. In a twelve-page decision, he affirmed the Commissioner's denial because George's testimony was inconsistent with and not supported by the medical record. *See id.* at 10-21. After the Social Security Appeals Council denied George further administrative review (*id.* at 1), she filed this civil action seeking judicial review under 42 U.S.C. § 405(g). ECF No. 1.; *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) ("[T]he Commissioner's decision does not become final until after the Appeals Council makes its decision denying the claimant's request for review.").

## II.   STANDARD OF REVIEW

Title II of the SSA, 42 U.S.C. §§ 401-434, governs the disability insurance program. A person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step evaluation process. 20 C.F.R. § 404.1520.

First, the claimant must not be presently doing any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work that "involves doing significant physical or mental activities" for pay or profit. *Id.* § 404.1572. Second, the claimant must have a severe impairment or combination of impairments. *Id.* § 404.1520(a)(4)(ii). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the federal regulatory

list. *See id.* § 404.1520(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpt. P, app. 1). Before proceeding to steps four and five, the Commissioner assesses the claimant's residual functional capacity ("RFC") and considers her past relevant work ("PRW"). *See id.* § 404.1520(a)(4), (e)-(f). RFC means "the most [a claimant] can still do despite [her] limitations," *id.* § 404.1545(a)(1), while PRW means work the claimant has done "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1).

Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to her PRW considering her RFC. *Id.* § 404.1520(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any other relevant work, considering the claimant's RFC, age, work experience, and education. *Id.* § 404.1520(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a

preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)).

"A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* (quoting same). The Court may neither reweigh evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (alteration in original) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

### III. ANALYSIS

The Commissioner, acting through the ALJ, completed the five-step evaluation process here. *See* Tr. 12-21. George does not challenge the ALJ's findings at steps one through three, namely that George has: (1) not engaged in substantial gainful activity since December 2018; (2) several severe impairments, including UC; and (3) no impairments or combination of impairments that qualify under the federal regulatory list. *Id.* at 12-14. But she claims the ALJ erred in determining her RFC, which is set forth below:

> [George] has the [RFC] to perform light work as defined in 20 CFR [§] 404.1567(b) except she can frequently reach, handle, and finger with the bilateral upper extremities. She can occasionally climb, balance, stoop, kneel, crouch, and crawl. She can have occasional exposure to pulmonary irritants, including dust and fumes. [George] is capable of understanding, remembering, and carrying out simple tasks and instructions. She is precluded from fast-paced or production rate pace work.

*Id.* at 14. Using his RFC determination, the ALJ completed steps four and five and concluded George (4) could not perform her PRW as a training representative, but (5) could perform jobs existing in significant numbers in the national economy, including Mail Room Clerk, Office Helper, and Cleaner. *Id.* at 20-21. Because of the step-five finding, the ALJ decided George was

4

not disabled and thus not entitled to DIB. *Id.* at 21. George asserts the ALJ erred in failing to account for the effects of her UC and by not evaluating her case under the correct legal standard. ECF No. 17 at 5.

### A. The ALJ accounted for the effects of George's UC.

"The ALJ is responsible for assessing the medical evidence and determining the claimant's [RFC]." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). He bases his determination "on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). The Court must defer to his RFC determination if substantial evidence supports it. *Perez*, 777 F.2d at 302.

Finding at step two that George had the severe impairment of UC did not preclude the ALJ from determining George has the RFC to perform light work, and such an RFC determination "is not necessarily inconsistent with that finding." *Boyd*, 239 F.3d at 706; *see also Mason-Watts v. Saul*, No. 4:19-cv-580-Y, 2020 WL 5552152, at *7 (N.D. Tex. Aug. 12, 2020) (explaining "whether a claimant's impairments are severe at Step Two is a different inquiry than an ALJ's assessment of the claimant's RFC"), *rec. adopted sub nom. Mason v. Saul*, 2020 WL 5544271 (N.D. Tex. Sept. 16, 2020). George contends the ALJ "correctly found that [her UC] was severe" at step two, "but he erroneously failed to provide any valid corresponding limitations in his RFC assessment." ECF No. 17 at 11 (emphasis removed).

An ALJ does "not err," however, "in finding severe impairments at step two and not attributing any limitation to those impairments in the RFC assessment" if he "considered the limitations that were encompassed by the severe impairments or accounted for the limitations in some respect before making a disability finding." *Campbell v. Berryhill*, No. 3:15-cv-3913-N-BH, 2017 WL 1102797, at *11 (N.D. Tex. Feb. 24, 2017), *rec. adopted*, 2017 WL 1091651 (N.D. Tex. Mar. 23, 2017). Applying this rule, the Court in *Campbell* concluded the ALJ erred because he

5

"expressly found" a severe impairment at step two, but "did not expressly address what impact, *if any*, it had in determining Plaintiff's RFC." *Id.* at *12. He "provided no explanation to show that he considered the severe impairment." *Id.*

Here, the ALJ expressly addressed the impacts of George's UC in determining her RFC. He referenced "ulcerative colitis" seven times in discussing George's RFC (Tr. 15-19) and devoted two paragraphs exclusively to discussing the related medical records. *Id.* at 16. He considered limitations related to George's symptoms of abdominal pain and incontinence. *See id.* at 15-19. He explained the evidence of abdominal pain warranted an RFC accommodation while the evidence of incontinence did not. *See id.* As the substantial evidence set forth below supports the ALJ's analysis, the Court must defer accordingly. *See Perez*, 777 F.2d at 302.

The ALJ recognized George, who was diagnosed with "chronic active colitis" in 2018 (Tr. 16 (citing Tr. 258)), frequently reported abdominal pain. *Id.* (citing Tr. 350, 357, 374). Although two State Agency Medical Consultants ("SAMCs") opined George could perform work at the medium exertional level, the ALJ reasoned the "medical evidence showing ongoing abdominal pain" supported a "greater limitation to the light level and occasional postural limitations due to her [UC]." *Id.* at 19. He accommodated the RFC accordingly: "The limitation to light work with occasional climbing, balancing, stooping, kneeling, crouching, and crawling accommodate [George's] reported pain and symptoms associated with . . . [UC] . . . ." *Id.* at 18.

Unlike with George's abdominal pain, the ALJ found that evidence of her incontinence did not warrant an additional RFC accommodation because the medical record did not support it. The ALJ summarized George's hearing testimony, including her needing a fifteen-to-twenty-minute restroom break for each of thirty BMs experienced per workday. *Id.* at 15. He also mentioned an April 2019 consultative examination and a June 2019 gastroenterologist visit, during which George

reported relatively fewer BMs experienced per day, ten and five-to-ten, respectively. *Id.* at 335, 382-83. The ALJ noted the apparent inconsistency: "[A]lthough at the hearing, [George] reported 30 [BMs] per day, she routinely reported to her physicians between five and ten [BMs] per day." *Id.* at 17 (citing Tr. 335, 383).

The ALJ has discretion to resolve evidentiary conflicts like the one he noted. *Brown*, 192 F.3d at 496. And where the evidence at issue is the claimant's subjective complaints (here, George's testimony and reports to her physicians), the ALJ turns to the objective medical record, and the record as a whole, for support:

> There must be objective medical evidence from an acceptable medical source that shows [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence . . . , would lead to a conclusion [the claimant is] disabled.

20 C.F.R. § 404.1529(a); *see also Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988) (explaining the ALJ must "require that subjective complaints be corroborated, at least in part, by objective medical findings").

The ALJ's "evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990); *see also Draper v. Apfel*, 248 F.3d 1139 (5th Cir. 2001) ("It is within the province of the ALJ to make credibility determinations concerning testimony at administrative hearings."). Although George contends the ALJ erroneously discredited her hearing testimony (ECF No. 17 at 17), the ALJ considered substantial evidence from the objective medical record (medical opinions and effects of medication) and the record as a whole (hearing testimony, reported daily activities, and course of treatment) in excluding an incontinence-based RFC accommodation.

First, he considered the medical opinion evidence. An ALJ "may not—without opinions from medical experts—derive the applicant's [RFC] based solely on the evidence of his or her

7

claimed medical conditions." *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009). The ALJ noted six medical experts in discussing the opinion evidence. Tr. 18-19. None opined George was disabled, either because of incontinence specifically, UC generally, or otherwise. *See id.*; *id.* at 71-76, 87-96, 332-36, 342-48; *see also Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (finding substantial evidence supported RFC determination partly where "no physician who examined [the claimant] pronounced her disabled").

The ALJ considered "somewhat persuasive" the opinions of SAMCs Yvonne Post, D.O and Brian Harper, M.D. *See* Tr. 19. Both doctors cited evidence of George's "UC with frequent trips to the restroom." *Id.* at 72, 89. Dr. Harper also cited evidence of George "report[ing] problems w/ sleeping due to frequent/painful trips to restroom." *Id.* at 89. Yet both doctors opined George possessed the RFC to work at the medium exertional level. *Id.* at 19 (citing Tr. 71-72, 87-89). And neither concluded George was disabled. *Id.* at 76, 96; *see also Harper v. Sullivan*, 887 F.2d 92, 97 (5th Cir. 1989) (finding substantial evidence supported ALJ's credibility assessment partly where "no physician on record has pronounced [the claimant] disabled").

Second, the ALJ addressed the effects of medication. A "medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." *Lovelace*, 813 F.2d at 59. The ALJ documented a medical-record trend of George's incontinence improving upon taking the medication Entyvio. *See* Tr. 16; *see generally* News Release, U.S. Food & Drug Admin., FDA Approves Entyvio to Treat Ulcerative Colitis and Crohn's Disease (May 21, 2014), 2014 WL 2154165. Beginning in April 2018, an anatomic pathology report showed George's "ulcerative pancolitis in remission on Entyvio." Tr. 258. A contemporaneous colonoscopy indicated George, who is "[n]ow on Entyvio," has "healing colitis." *Id.* at 281. By October 2018, George's doctor noted her soft frequent stools occurred no more than eight times daily. *Id.* at 265.

8

When George stopped taking Entyvio in late 2018—around the time she alleges her disability began (*id.* at 155)—her colitis worsened. *See id.* at 16; *see also id.* at 40-41 (Hr'g Test.). For example, a June 2019 colonoscopy "showed severe colitis with ulcers." *Id.* at 383. George resumed taking Entyvio in 2020. *See id.* at 16; *id.* at 41 (Hr'g Test.). And by her August 2020 hearing, she testified her incontinence was "[n]ot as bad as [it] used to be" (*id.* at 46) because of the medication:

> My watery [BMs] are not as frequent as they used to be. I used to not make it to the bathroom all the time, and now I can make it to the bathroom most of the time. So, there is improvement. It's just not fast improvement. . . . But I think the Entyvio is working, for the most part.

*Id.* at 41-42; *see also* Tr. 15. George now takes Entyvio regularly and indicated that, as of the hearing date, she could afford the medication through her insurance company. *See id.* at 41-42; *Lovelace*, 813 F.2d at 59 (quoting *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986)) ("If, however, the claimant cannot afford the prescribed treatment or medicine, and can find no way to obtain it, 'the condition that is disabling in fact continues to be disabling in law.'"). The ALJ thus noted George "reported improvement in her symptoms with the use of Entyvio." Tr. 17.

Third, the ALJ reviewed George's reported daily activities. *Id.* at 18 (citing, *e.g.*, Tr. 192, 219-20, 222). "It is appropriate for the Court to consider the claimant's daily activities when deciding the claimant's disability status." *Leggett*, 67 F.3d at 565 n.12; *see also Reyes v. Sullivan*, 915 F.2d 151, 155 (5th Cir. 1990) ("[T]he inconsistencies between [plaintiff's] testimony about his limitations and his daily activities were quite relevant in evaluating his credibility."). George visits the store "a couple of times a week to get exercise walking" (Tr. 192); reads, watches television, and sends text messages and emails daily (*id.* at 192, 222); can use the computer and do dishes (*id.* at 219); can prepare meals like "sandwiches, cereal, eggs, toast, rice, oven cooked chicken & pork chops, jello" (*id.* at 220); and can do household chores like "light vacuum, dust

9

wand, load dish washer, [and] clean counters." *Id.* The ALJ thus noted her daily activities "are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." *Id.* at 18.

Fourth, the ALJ discussed George's infrequent doctor visits. The ALJ noted she "has received limited treatment for her main complaint of [UC]," including that she "has not seen her gastroenterologist for over a year." *Id.* at 15. At the August 2020 hearing, George testified she had not visited her gastroenterologist since June 2019 and had only seen him once more in 2019 before then. *See id.* at 39. The ALJ thus noted "[s]uch limited attempts at treatment are not consistent with the severity of symptoms described at the hearing." *Id.* at 15; *see Coats v. Colvin*, No. 3:12-cv-4968-M-BK, 2013 WL 6052879, at *5 (N.D. Tex. Oct. 11, 2013) ("Considering the relative infrequency of Plaintiff's doctor visits and the conservative treatment of her [impairment], the ALJ's failure to include in the RFC any limitations based on such evidence is not error."), *rec. adopted*, 2013 WL 6052879, at *1 (N.D. Tex. Nov. 14, 2013).

A reasonable mind could accept these items—the medical opinions, effects of Entyvio, hearing testimony, self-reported daily activities, and infrequent doctor visits—as more than a mere scintilla of evidence supporting the ALJ's decision to exclude an incontinence-based RFC accommodation for her UC. *See Ripley*, 67 F.3d at 555; *Boyd*, 239 F.3d at 704. The Court cannot reweigh the evidence, *Harris*, 209 F.3d at 417, usurp the ALJ's authority to determine George's RFC, *Perez*, 777 F.2d at 302, or invade the ALJ's province to resolve evidentiary conflicts and assess the credibility of subjective complaints. *Brown*, 192 F.3d at 496; *Villa*, 895 F.2d at 1024. The Court should defer and affirm.

George insists her "[UC] may only be accommodated by the ALJ finding that [it] would cause her to be off-task—because of her frequent need to use the restroom." ECF No. 17 at 12.

10

She believes the ALJ should have resolved the inconsistency between her testimony (that she needs a fifteen-to-twenty-minute restroom break for each of thirty BMs experienced during an eight-hour workday) and her reports to physicians (that she has five-to-ten BMs per day) via the following calculation: "The ALJ should have realized that at best, [George] would still be off task a minimum of 75 minutes per workday in the best case scenario (5 restroom visits x 15 minutes)." *Id.* at 15 (emphases removed). George submits this calculation renders her disabled.

However, it was for the ALJ to consider and weigh the evidence. George's assertion that she requires five BMs multiplied by fifteen minutes per BM derives from subjective evidence as mentioned above, *i.e.*, she *testified* each BM takes her fifteen minutes, and she *reported* to her physicians five BMs per day. The "ALJ must consider a claimant's subjective symptoms as well as the objective medical evidence," but he "is not required . . . to give subjective evidence precedence over medical evidence." *Loya v. Heckler*, 707 F.2d 211, 214 (5th Cir. 1983). Accordingly, the ALJ did not need to base his RFC determination on George's testimony or reports to physicians. *See also* 20 C.F.R. § 404.1529(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled."). He could properly assign more weight to the objective medical evidence and the record as a whole. *See id.*

B.  **The ALJ applied the correct legal standard.**

George maintains precedent from the Fifth Circuit and this District warrant remand. ECF No. 17 at 12-13, 16. The ALJ here, however, reached a decision that comports with those authorities, which are otherwise distinct. George urges the Court to apply *Crowley*, where the Fifth Circuit concluded that "incontinence may be an impairment for purposes of the [SSA] and must be considered by the Commissioner in determining whether a claimant is disabled." 197 F.3d at 198.

11

The ALJ erred in *Crowley* because he "did not expressly consider the severity of [the plaintiff's] incontinence." *Id.* The plaintiff reported his incontinence in his DIB application, and the record reflected evidence of the condition, including: a formal diagnosis; testimony; and a consulting physician's acknowledgement that the plaintiff suffered with "episodic, intermittent and unpredictable" incontinence. *Id.* at 199. Yet "[d]espite this evidence, the only reference to [the plaintiff's] incontinence in the ALJ's findings, adopted by the Commissioner, was that its cause had yet to be diagnosed by [the plaintiff's] doctors." *Id.* The Fifth Circuit vacated and remanded with instructions for the ALJ to consider the plaintiff's claim of incontinence. *Id.* at 199-200.

Here, however, the ALJ considered George's incontinence, referencing George's "bowel movements" five times in his decision. Tr. 15-17. The ALJ addressed the frequency of George's BMs by juxtaposing her hearing testimony with her reports to physicians. He then relied on substantial evidence in the medical record and the record as a whole in determining her incontinence was not as severe as her subjective complaints suggested. Just because there is evidence of incontinence does not mean a claimant is entitled to an incontinence-based RFC accommodation that would effectively render her disabled. It does mean the ALJ should "consider" that evidence, and the record reflects he properly did so here. *See Crowley*, 197 F.3d at 198-99; *Campbell*, 2017 WL 1102797, at *11. Consequently, the Fifth Circuit's decision in *Crowley* does not dictate reversal, nor do the following three cases George cites from this Court. *See* ECF No. 17 at 12-13.

In *Aguero v. Saul*, the Court remanded because the "ALJ's RFC discussion did not address or mention Plaintiff's urinary incontinence" or "discuss or acknowledge" the plaintiff's testimony and complaints of urinary incontinence. No. 3:18-cv-3342-BH, 2020 WL 1493551, at *11 (N.D. Tex. Mar. 26, 2020). Thus, it was unclear whether the ALJ properly "considered the effects that

this impairment may have on her ability to work at step five." *Id.*; *see id.* at *9 (quoting *Crowley*, 197 F.3d at 198). Just as George's case differs from *Crowley*, it similarly differs from the facts in *Aguero*.

In *Hamblen v. Colvin*, the Court remanded even though "the ALJ acknowledged Plaintiff's testimony and statements to his physicians that he suffered from fecal incontinence," because his RFC determination "failed to consider any medical opinion regarding what effects, if any" the plaintiff's fecal incontinence and other impairments "had on his ability to work." No. 3:12-cv-2009-BH, 2013 WL 4858750, at *12-13 (N.D. Tex. Sept. 12, 2013); *see id.* (quoting *Williams*, 355 F. App'x at 832 n.6, and *Crowley*, 197 F.3d at 198). There was "no evidence in the record showing that a physician completed a physical RFC assessment or even opined about Plaintiff's ability to perform work-related functions despite his gastro-intestinal impairments." *Id.* at *12; *see also Erica W. v. Berryhill*, No. 3:17-cv-3422-M-BH, 2019 WL 1300352, at *19 (N.D. Tex. Feb. 26, 2019) (similar analysis), *rec. adopted*, 2019 WL 1294818 (N.D. Tex. Mar. 21, 2019). The ALJ here found somewhat persuasive the medical opinions of Drs. Post and Harper, who each completed physical RFC assessments. *See* Tr. 19. As discussed, the doctors cited evidence of George's incontinence, but still opined she could perform work at the medium exertional level and was, accordingly, not disabled.

Finally, in *Osborn v. Berryhill*, the Court remanded even though the ALJ's RFC determination accounted for the plaintiff's incontinence, because the accommodating language used was ambiguous. No. 2:16-cv-67, 2017 WL 4342127, at *6 (N.D. Tex. Sept. 12, 2017), *rec. adopted*, 2017 WL 4342111 (N.D. Tex. Sept. 28, 2017). The plaintiff's UC and incontinence were "undisputed," with the plaintiff's "long standing treating physician" opining the plaintiff was "unable to return to full-time work" and making "specific findings that plaintiff suffered from

13

uncontrollable diarrhea, and was limited to 2 hours of work." *Id.* at *5-6. Accordingly, the ALJ's RFC determination "found plaintiff could not perform the full range of light work because his fecal incontinence required that plaintiff have 'access to a restroom at work.'" *Id.* at *6. The ALJ erred, however, because he did not "set out what access was required," including "whether access meant scheduled or unscheduled access." *Id.*

The Court's ruling in *Osborn* is inapplicable here because George does not challenge the ALJ's RFC determination for its ambiguity, but rather for an omission, as the ALJ did not include an "access" limitation or other incontinence-based RFC accommodation. And unlike in *Osborn*, the severity of George's incontinence is disputed. The medical opinion evidence is not consistent with her subjective complaints and does not support the extent of her claimed limitations. She does not proffer or identify any medical opinion that she is unable to work because of incontinence, much less one from her long-standing treating physician.

In sum, the three cases George cites from this Court involved scenarios where the ALJ erred in deciding a claimant is not disabled despite evidence of incontinence, namely where the ALJ: (1) does not consider evidence of incontinence; (2) considers such evidence, but the evidence lacks a relevant medical opinion; or (3) considers the evidence and assesses a corresponding RFC accommodation, but the accommodating language used is ambiguous. Because George's case does not fall within these fact patterns, those cases do not favor reversal here.

George makes final arguments regarding the Administrative Procedure Act ("APA") and the evidentiary standard the ALJ used in reviewing the administrative record. ECF No. 17 at 16-18. Neither are availing. Citing 5 U.S.C. § 706(2)(A), she claims the ALJ's decision denying DIB "amounts to agency action that is arbitrary and capricious under the APA." *Id.* at 16. But the Court does not have jurisdiction under the APA to review a decision denying DIB, as 42 U.S.C. § 405(g)

provides the "exclusive method for review." *See Mack v. Comm'r of Soc. Sec. Admin.*, No. 3:06-cv-851-B BH, 2009 WL 812147, at *2 (N.D. Tex. Mar. 26, 2009) (citing 42 U.S.C. § 405(h)), *rec. adopted*, 2009 WL 812147 (N.D. Tex. Mar. 26, 2009); *see also Califano v. Sanders*, 430 U.S. 99, 107 (1977) ("[T]he APA does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action."). The Court should overrule this point.

George next asserts the ALJ was "required to evaluate this case under the preponderance of evidence standard" and thus committed legal error by not referencing "the preponderance of evidence standard in discrediting [her] testimony." ECF No. 17 at 18. But "this court is not part of the administrative review process; the substantial evidence standard, not the preponderance of evidence standard, governs here." *Jones v. Astrue*, No. 3:10-cv-2342-D, 2011 WL 2633793, at *4 (N.D. Tex. July 5, 2011). Substantial evidence reflects George's testimony was inconsistent with and unsupported by the medical record. Moreover, George does not identify the improper evidentiary standard the ALJ allegedly applied (*see* ECF No. 17 at 18), and the ALJ did not specify he applied a particular evidentiary standard. *See* Tr. 10-21. George cannot "recast h[er] disagreements over the ALJ's weighing of the factual evidence as a legal question of misapplied standards, absent more concrete evidence that the ALJ actually applied one legal standard instead of another." *Jones*, 2011 WL 2633793, at *4. The Court should overrule this point.

### C. George does not show harmful error.

The Court's review remains highly deferential to the ALJ. *Owen v. Kijakazi*, No. 21-60545, 2022 WL 118427, at *1 (5th Cir. Jan. 11, 2022). It will only reverse the ALJ's decision if "the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (explaining the "harmless error rule" and stating that "[p]rocedural perfection in

administrative proceedings is not required"). Even if the ALJ somehow erred in determining George's RFC, there is no indication any error harmed George's substantial rights.

George does not identify or proffer a medical expert who corroborates her subjective complaints of incontinence and opines she is disabled. *See* ECF Nos. 17, 19; *Harrell*, 862 F.2d at 481. Again, the ALJ considered six medical experts, including the two SAMCs who completed RFC assessments, cited evidence of her incontinence, and opined she was not disabled. *See also* 20 C.F.R. §§ 404.1512 (stating the claimant generally must prove her disability), 404.1545 ("In general, [the claimant is] responsible for providing the evidence [the ALJ] will use to make a finding about [the claimant's RFC]."). And while George contends objective medical records support her subjective complaints of incontinence (*see* ECF No. 19 at 2), she does not portray any evidence as being probative of her BM frequency and duration (*see id.*). Yet it is her BMs' frequency and duration that she contends renders her disabled. ECF No. 17 at 12-16.

Even if she identified such evidence, George's "burden here is not to show that there may be some evidence which could conceivably be read as contradictory to an RFC for light work, but rather to show there is no more than a 'mere scintilla' of evidence supporting the ALJ's RFC finding." *Stinnett v. Berryhill*, No. 4:16-cv-00252-Y-BL, 2017 WL 1403660, at *3 (N.D. Tex. Mar. 31, 2017), *rec. adopted*, 2017 WL 1382936 (N.D. Tex. Apr. 18, 2017). As there is more than a mere scintilla of evidence supporting the ALJ's RFC determination, the Court should affirm the ALJ's decision.

## IV.  CONCLUSION

"A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record." *Campbell*, 2017 WL 1102797, at *10. Here, the ALJ applied proper legal standards in excluding

an incontinence-based RFC accommodation for George's UC, and substantial evidence supports that exclusion. Accordingly, the undersigned **RECOMMENDS** that Judge O'Connor **AFFIRM** the Commissioner's decision and **DISMISS** this case **with prejudice**.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on May 9, 2022.

                                                  _____
                                                  Hal R. Ray, Jr.
                                                  UNITED STATES MAGISTRATE JUDGE